The defendants ask the Commission to accept a different "wage chart" or I.C. Form 22 Statement of Days Worked and Earnings of Injured Employee, showing the plaintiff was entitled to a compensation rate based on an average weekly wage of $254.52, rather than the $274.00 on which compensation payments prior to the hearing were calculated. Defendants argue that this Form 22 was attached to the Pre-trial Agreement and apparently lost by the Commission after the Agreement was submitted. Paragraph five of that Agreement states, "Plaintiff's average weekly wage will be determined by a wage statement presented at the May 18, 1994 hearing". At the hearing (Tr. p. 3), a Form 22 was handed up by defendants' counsel, accepted into evidence, and marked "Stipulated Exhibit 1" (Tr. Exhs. p. 61). However, an average weekly wage cannot "be determined by way of" it because days worked are not indicated, and calculation of the average depends on reducing the time figure by which total wages are divided by excluding anomalous gaps in the work schedule that would otherwise skew the calculation of plaintiff's pre-injury wages. Under these circumstances, the Deputy Commissioner resorted to the best evidence of record — three approved I.C. Form 21 and 26 agreements to pay compensation, dated 12 August 1991, 23 October 1991, and 24 January 1992, bearing the same $274.00 figure. A notation on the first Form agreement making the compensation rate calculations subject to later wage verification was dropped from the latter two. Plaintiff objects to the wage chart defendants offer now, which shows the same wage figures as the otherwise blank one handed up at hearing, but for $458.00 stricken out. Some inadvertence may have kept the Deputy Commissioner from getting evidence pertinent to this issue at hearing, but under all the circumstances, it would be unfair to force the plaintiff to litigate it again now.
Plaintiff asked for this hearing because of a dispute over whether she should have surgery. While it is certainly a grave decision to have two-level back fusion surgery, since conservative therapies were tried for eight months without relief from pain that interfered with her work, and plaintiff was counseled by her treating physician and the consulting surgeon, and an IME physician, that surgery was a reasonable option, and plaintiff desired the surgery even though she was able to work, the Deputy Commissioner's decision to authorize the surgery was appropriate.
Defendants except to the Deputy Commissioner's prospective award of temporary total disability benefits for the period of time during which the plaintiff would be disabled after this surgery. With this, she sought to address defendants' argument that, since any surgery would take place more than two years after the last payment of compensation (in part because defendants withdrew their agreement to be financially responsible for the surgery, initially scheduled for May, 1993), the plaintiff would have to show a change of condition in order to hold defendants liable for indemnity benefits. Although the plaintiff returned to work on March 14, 1992 and continued to earn wages through the date of the hearing, she began a course of treatment that included epidural blocks at the same month, and no permanent partial disability benefits — which are obviously in prospect in light of her medical and vocational history — have never been awarded. The mere passage of time does not close a pending claim. Beard v.Blumenthal Jewish Homes, 87 N.C. App. 58, 359 S.E.2d 261 (1987),cert. denied, 321 N.C. 471, 364 S.E.2d 918 (1988). Neither does the unilateral decision by a defendant that it no longer owes benefits. The choice of defendants' adjustor to put "yes" beside question 16 ("Does this report close the case — including final compensation payment?"), has no legal significance, by itself. The I.C. Form 28B Insurance Carrier's Report of Compensation and Medical Paid — at least in recent years — is designed to facilitate compliance with the statutes requiring interim and final reports of compensation paid. See N.C. Gen. Stat. §§ 97-18(h); 97-92(c). This form is also used to assure that plaintiff is aware when defendant takes such a position — by Commission rule, and by statute following the 1994 amendment to N.C. Gen. Stat. § 97-18(h), the insurer is required to send a copy of the I.C. Form 28B bearing the question 16 noted above to the plaintiff. See also Davis v. Edgecomb Metals Co., 63 N.C. App. 48,303 S.E.2d 612 (1983). However, the I.C. Form 28B is not "approved" by the Commission in the sense that agreements for compensation or medical bills are, and they are scrutinized only for completeness and apparent accuracy by the Commission's statistics department. Plaintiff had an open and active claim, and her right to additional benefits depends on proof of causation, her condition, and appropriate treatment, and not the criteria of N.C. Gen. Stat. § 97-47.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, other than minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the injury by accident.
3. Defendant is self-insured and Key Risk Management Services is the servicing agent.
4. The date of the injury by accident was July 24, 1991.
5. In addition, the parties stipulated into evidence the following medical and vocational rehabilitation records:
a.) William P. Parker, M.D. (5 pages)
b.) Triangle Spine and Back Care Center (5 pages)
c.) Raleigh Community Hospital (5 pages)
d.) Cape Fear Memorial Hospital (23 pages)
e.) Southeastern Orthopaedic Clinic (2 pages)
f.) Coastal Orthopedics (16 pages)
g.) John J. Fishman, M.D. (9 pages)
h.) American Eagle Rehabilitation (60 pages)
A Pre-Trial Agreement was submitted by the parties and it is incorporated herein by reference. The Form 21 and two Form 26 agreements having been approved by the Commission constitute Awards of record and the same are incorporated herein by reference.
Form 22 was admitted into evidence as Stipulated Exhibit #1. In addition, the parties stipulated into evidence: Plaintiff's Answers to Interrogatories Posed by Defendant; Employee-Plaintiff's Supplemental Answers to Interrogatories received by the Industrial Commission on September 1, 1994; and, medical records from South Brunswick Family Practice concerning Susan Gillikin.
* * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the deposition of William F. Lestini, M.D. are OVERRULED. Counsel for defendants' motion to strike testimony within the deposition of Dr. Lestini is DENIED.
* * * * * * * *
Based upon all of the competent, credible evidence of record, and the reasonable inferences drawn therefrom, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a thirty-two year old married female with no children. She graduated from high school, has earned some college credits, and holds a Food Service Supervisor Certificate. As of July 24, 1991, plaintiff had been employed as a Dietary Supervisor at Hermitage House Rest Home nearly ten months.
2. Plaintiff sustained an admittedly compensable injury by accident on July 24, 1991, when she was lifting a twenty-five to thirty pound case of oatmeal and felt something pop in her back.
3. As a result of the admittedly compensable injury by accident, plaintiff sustained immediate severe low back pain which radiated down the left anterior leg into the thigh and intermittently into the knee and calf area. Her immediately incapacitating pain subsided, but she continued to have persistent pain and discomfort to her back, hip and leg. Sitting and bending aggravated her condition, as did coughing, sneezing and sex. Plaintiff received conservative treatment and work hardening exercises as a part of physical therapy until she first returned to work on October 16, 1991, at reduced hours.
4. Eventually, plaintiff returned to work on a full-time basis. At first, she continued her work as a Dietary Supervisor, but was demoted to cook by the Administrator/Owner of the Hermitage House, and paid less in wages than she had been receiving as a Dietary Assistant.
5. After sustaining her injury by accident, plaintiff initially sought treatment at Cape Fear Memorial Hospital. There she related a history of one prior incident of back strain in 1988 which had not resulted in any complications or prolonged pain. At a later date, the medical records memorializing plaintiff's prior incident of back strain, and her treatment for same at South Brunswick Family Practice in New Jersey, were received and admitted into evidence. There is no convincing evidence in these medical records or elsewhere in the record that plaintiff's prior back strain was related to her admittedly compensable accident in 1991 or to her condition at the time of the hearing before the Deputy Commissioner.
6. On August 8, 1991, Key Risk Management approved a referral to Dr. Kevin Scully, an orthopedic surgeon who has been plaintiff's primary treating physician. Dr. Scully prescribed physical therapy and work hardening programs. A CT Myelogram ordered by Dr. Scully demonstrated degenerative disc disease at the L4 and L5 levels, "complete lumbarization of the S-1 level, as well as moderate foraminal stenosis at the L4-5 bilateral level". Plaintiff also had consultations and examinations conducted by Dr. William P. Parker, Jr., a neurosurgeon, and Dr. John J. Fishman, a pain specialist. Dr. Fishman administered a series of three epidural injections which only temporarily alleviated plaintiff's pain.
7. On March 30, 1992, Dr. Fishman indicated plaintiff was at maximum medical improvement with no rating or physical impairment of a permanent partial basis. She was given a lifting restriction of fifty pounds. Plaintiff continued to be treated by Dr. Scully for intermittent severe lower back strain symptomology during 1992. As a result of the recurrent pain in her lower back, plaintiff missed several weeks of work in 1992. On January 7, 1993, Dr. Scully recommended treatment evaluation by a fellowship trained spine surgery specialist.
8. An independent medical exam by Dr. William Lestini was authorized on February 11, 1993. Dr. Lestini initially recommended a lumbar MRI and CT discography, which are more accurate diagnostic tools than a CT Myelogram. The MRI scan revealed degenerative disc disease and a herniated nucleus pulposus protrusion at L4-5, as well as a Schmorl's node at that level. The discogram result indicated that plaintiff had internal disc derangement at L-5 with a 9-10 pain reproduction as well as mild degenerative changes with 3-4 pain at L5-S1. Together, the test results obtained by Dr. Lestini demonstrated internal tears of the L-5 disc which occurred as a result of the type of bending and lifting incident plaintiff described as occurring on July 24, 1991. In addition, plaintiff's degenerative disc disease made her more susceptible to injury by lifting or bending.
9. At the time of the review of the discogram on April 1, 1993, the options of surgery were explained to plaintiff by Dr. Lestini. Although surgery is elective rather than mandatory for someone with plaintiff's diagnosis and symptomology, it is the only viable means of alleviating pain subsequent to the completion of conservative treatment methodologies such as physical therapy, epidural steroid therapy and work modification when pain remains at a high threshold. Dr. Lestini and Dr. Parker agreed that such a surgical procedure would have about an 85-90% chance of significantly relieving plaintiff's pain and affording her substantial relief on a permanent basis. Plaintiff, weighing the risks of such surgery against the possibility of relief from persistent and chronic lower back pain and symptomology has elected surgery, despite knowledge of the risks, and is desirous of proceeding with the back fusion.
10. Plaintiff obtained permission of the insurance claims representative to obtain this treatment at the carrier's expense, and fusion surgery with Steffe plates was scheduled for May 28, 1993. In preparation for surgery, plaintiff donated her own blood. However, the adjuster withdrew the promise to pay for the surgery, and it was canceled after questions were raised about plaintiff's injuries prior and subsequent to the compensable one by the administrator/owner of Hermitage House.
11. There is no convincing evidence in the record that plaintiff's subsequent accidents, including a fall in 1992, caused or permanently altered her condition in the spring of 1993 and at the time of the hearing before the Deputy Commissioner. Plaintiff fell down her steps of her house in 1992 and was bruised. She reported this incident to Dr. Scully, but suffered no change in her back condition or additional injury.
12. Moreover, although plaintiff was from time to time physically abused by her husband, there is no convincing evidence that she sustained anything other than bruises on her arms and face.
13. Stipulated Exhibit #1, an I.C. Form 22, is incomplete and cannot be utilized for the purpose of calculating an average weekly wage.
14. No fraud or misrepresentation is alleged by defendants regarding the average weekly wage on the I.C. Form agreements, and defendants have failed to carry their burden of proof with regard to the issue of mutual mistake concerning the average weekly wage on I.C. Form agreements.
15. The specific traumatic incident of July 24, 1991 aggravated plaintiff's previously asymptomatic degenerative disc disease and was a proximate cause of her persistent and intermittently debilitating lower back pain and internal tears of the discs at the L4-5 area. There is no convincing evidence on the record that plaintiff's 1988 back injury, her 1992 fall or any form of physical abuse contributed to, significantly aggravated or resulted in a separate and intervening cause of the subject condition of plaintiff's back.
16. Conservative treatment, including work hardening, physical therapy, consistent exercise and epidural spinal blocks have not alleviated plaintiff's pain. There are no comparable options available to her other than surgery to alleviate pain and prevent further degeneration of her condition.
* * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer Hermitage House on July 24, 1991 by virtue of the lifting incident, which was causally related to her continued symptomology and lower back pain as of the time of the hearing before the Deputy Commissioner. N.C. Gen. Stat. § 97-2(6). Plaintiff has met her burden of proving the causal relationship between the compensable event and the condition for which she seeks compensation. Harvey v. A.C.Lawrence Leather Company, 231 N.C. 477, 57 S.E.2d 760 (1950). There is sufficient foundation of expert medical testimony relating plaintiff's degenerative disc disease and internal disc tears to her admittedly compensable accident of July 24, 1991.Click v. Pilot Freight Carriers, 300 N.C. 164, 167-69,265 S.E.2d 389, 391-392 (1980).
2. Plaintiff is entitled to have defendants provide all medical compensation reasonably necessary as a result of the subject injury by accident to the extent it tends to effect a cure, give relief or lessen her disability, including the surgery offered by Dr. Lestini. N.C. Gen. Stat. §§ 97-25; 97-2(19).Little v. Penn Ventilator Company, 317 N.C. 206, 345 S.E.2d 204
(1986); Hyler v. GTE Prods. Co., 333 N.C. 258, 425 S.E.2d 698
(1993).
3. Plaintiff is entitled to compensation at the rate of $182.67 per week for periods of disability resulting from the subject injury or reasonably necessary treatment of it.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commissioner enters the following
AWARD
1. Plaintiff is entitled to spinal fusion surgery with the physician of her choice, Dr. Lestini, at the expense of defendants, and benefits for any resulting period of disability. Plaintiff's reasonable medical compensation expenses relating to her compensable back injury sustained as a result of her injury by accident on July 24, 1991, shall be paid by the defendants when the statements for same are submitted to the adjusting agent and approved in accordance with the rules of the Commission.
2. As the average weekly wage of the plaintiff was properly determined in accordance with the approved I.C. Form 21 and 26 agreements to be $274.00 per week, plaintiff was not overcompensated during her period of temporary disability and defendants' motion and appeal for credit for overpayment is denied.
3. Defendants shall pay the costs due this Commission.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md