In accordance with the directives of the North Carolina Court of Appeals, the undersigned finds as fact and concludes as matters of law the following, which were agreed upon by the parties in an Industrial Commission Form 21 Agreement for Compensation for Disability, approved by the Industrial Commission on 23 April 1991, and the Set of Stipulations with exhibits which was filed on 21 August 1996, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 7 August 1990.
3. Plaintiff sustained an admittedly compensable injury on or about 7 August 1990 at which time plaintiffs average weekly wage was $499.38, yielding a compensation rate of $332.94 per week. The parties stipulate that defendants paid plaintiff compensation for disability through 25 June 1991. In addition, defendants paid plaintiff compensation at the rate of $332.94 per week from 25 June 1991 through 16 February 1993.
4. The parties stipulate the documents attached to the Set of Stipulations as Exhibit A may be admitted into evidence as evidence of communications between counsel and the Industrial Commission.
5. The parties stipulate plaintiffs Form 33 dated 21 February 1995, and defendants Form 33R dated 10 April 1995, which are contained in the Commissions file, into evidence as documentation of filings made on behalf of the respective parties but not as substantive evidence of the statements contained herein.
6. The parties stipulate that the Industrial Commission may refer to the contents of its file in order to determine (1) when plaintiff sought approval for medical treatment for which defendants have denied authorization and (2) when plaintiff filed her claim for additional benefits based upon an alleged change of condition.
7. The parties stipulate the Form 28B dated 24 March 1993, and contained in the Commissions file into evidence as a document submitted by defendants for filing with the Industrial Commission but not as substantive evidence of the statements contained therein. The parties further stipulate that plaintiffs counsel returned plaintiffs copy of the Form 28B dated 24 March 1993, to defendants because of plaintiffs contention that the filing of that form was inappropriate.
***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable back strain on 7 August 1990 while attempting to lift a patient during her employment as nurse by defendant hospital. Defendants paid plaintiff temporary total disability compensation pursuant to an I.C. Form 21 through 25 June 1991; and in addition, paid plaintiff temporary total disability compensation pursuant to an I.C. Form 26 for "recurrent TTD at a rate of $332.94 per week from 25 June 1991, through 16 February 1993. Pursuant to the Opinion and Award for the Full Commission filed on 12 April 1994, the full text of which is incorporated herein by reference, defendants were allowed to discontinue payment of temporary total disability benefits to plaintiff as of 25 June 1991 and defendants were allowed a credit for the compensation paid to plaintiff from 25 June 1991 through 16 February 1993. The Full Commission further ordered defendants to provide vocational rehabilitation services to plaintiff and ordered plaintiff to cooperate. The Full Commission also ordered defendants to provide continuing medical treatment to plaintiff as recommended by plaintiffs doctors.
The Full Commissions Opinion and Award filed 12 April 1994 concluded as follows:
Plaintiff retains the capacity to earn some wages in some employment. Plaintiffs exaggeration of her complaints and her failure to put forth an honest effort at therapy and at the only job interview she went to, were tantamount to refusal to cooperate with defendants vocational rehabilitative efforts, such [that] she is not entitled to further compensation under N.C. Gen. Stat. 97-29 from 25 June 1991, the date of the Form 24 Application to stop payment of benefits.
This Opinion and Award suspended defendants payment of temporary total disability benefits to plaintiff only for the period of her failure to cooperate with vocational rehabilitative efforts, commencing 25 June 1991. Suspension should have ceased when plaintiffs conduct changed and she cooperated with those vocational rehabilitative efforts ordered by the Industrial Commission. Therefore, this is not a "change of condition case.
2. At the time of the most recent hearing, 10 July 1995, before former Deputy Commissioner Jan Pittman, plaintiff, who was sixty-five years old, had not been employed since she last worked for defendant-employer in 1991 (16 November 1990 was actually the last day plaintiff worked). Plaintiff has not sought employment since May of 1992 because, she testified, "she could not work.
3. Defendants last payment of compensation to plaintiff was made by check issued on 17 February 1993 and cashed by plaintiff on 18 February 1993. Defendants tendered to plaintiff an I.C. Form 28B on 24 March 1993, asserting that the claim was closed. Plaintiffs counsel returned the original I.C. Forms 28B to defendants by letter dated 1 April 1993, because plaintiff believed the form was inappropriate since the case was then on appeal to the Full Commission.
4. In June, 1991, plaintiff sought treatment at Duke University Medical Center with neurosurgeon, Dr. Allan Howard Friedman. Dr. Friedman was unable to diagnose a cause for plaintiffs back pain, so he referred her to Dr. Dianne Scott, a specialist in chronic pain at Duke. Plaintiff initially presented to Dr. Scott on 3 December 1991. Dr. Scott diagnosed plaintiff with degenerative arthritis and treated plaintiff with non-steroidal anti-inflammatory medications, an anti-depressant and low dose narcotics. She also enrolled plaintiff in a pain management biofeedback program and suggested that she continue with her physical therapy. Defendants did not authorize this treatment, and plaintiff voluntarily paid for it herself.
5. Dr. Scott saw plaintiff in January 1992, and plaintiff indicated that she was improving as a result of participating in the recommended programs. Dr. Scott has continued to treat plaintiff, and in May 1996 she testified that plaintiff has maintained the supportive aspects of her treatment, including the biofeedback and physical therapy. In 1996, Dr. Scott was of the opinion that plaintiff was not likely to have been employable since July of 1992 (the date of the prior deposition testimony), because she has too many flare-ups of her back pain.
6. As of 3 December 1991, plaintiff demonstrated that she was cooperating with the treatment and rehabilitation instructions of Dr. Scott, and she has continued to do so.
7. In March 1993, plaintiff served notice of appeal on defendants from the 16 February 1993 Deputy Commissioners Opinion and Award. At the same time, plaintiff presented defendants with outstanding medical bills and requested approval for ongoing treatment with the Duke physicians, including Dr. Scott. In a letter dated 7 April 1993, counsel for defendants again tendered the Forms 28B, but asked only "that [plaintiffs counsel] treat this as a yearly report. In the same letter, defense counsel declined to submit medical bills for payment to defendant-carrier, unless they were for "authorized treatment, and further refused to authorize plaintiffs continued treatment at Duke. The only treatment that has been authorized by defendants at any time since 1991 is with Dr. Robert Lincoln, whose records as far back as 15 April 1991, clearly state that he had "nothing more to offer her, and would not make a return appointment for plaintiff. This is a case of admitted liability. Defendants are obligated to provide plaintiff with medical treatment that is reasonably required to effect a cure, provide relief, or lessen the period of disability.
8. Plaintiff filed a request for change of treatment and to approve Dr. Scott as her treating physician with the Industrial Commission on 15 August 1994. This request was made after plaintiff became aware through defendants refusal to pay for treatment provided by Dr. Scott that defendants interpreted the language of the Full Commission Opinion and Award directing defendants to provide continuing medical treatment to plaintiff as recommended by plaintiffs doctors to mean only those doctors chosen by defendants. Due to plaintiffs complaints of tremendous, ongoing pain, and per former Commissioner Wards letter of 6 September 1994, defendants scheduled plaintiff for a return appointment with Dr. Lincoln on 26 October 1994. However, plaintiff did not keep the appointment due to Dr. Lincolns negative attitude toward her. Plaintiffs failure to keep her appointment with Dr. Lincoln was justified. Dr. Lincoln had previously released plaintiff from his care and refused to give her a return appointment. Defendants then directed plaintiff to consult with another physician, Dr. Lee Whitehurst, in Raleigh. However, plaintiff was unable to see this physician because of lack of transportation to Raleigh.
9. Plaintiff brought a claim for additional benefits based upon a change in condition on an I.C. Form 33 dated 21 February 1995 and filed 23 February 1995. It is not necessary for plaintiff to prove a change of condition in this case because plaintiffs entitlement to compensation for her admittedly compensable injury of 7 August 1990 was still pending. Since the Opinion and Award of the Full Commission "discontinued payment of temporary total disability benefits and ordered defendants to provide and plaintiff to cooperate with vocational rehabilitation services, and, further, failed to address the issue of permanent partial disability compensation or a rating for plaintiff, it is clear that all of the compensable consequences of plaintiffs claim were not resolved and her claim was still pending. Defendants attempt to close the case unilaterally through the filing of an I.C. Form 28B is not legally justifiable or binding upon the Commission. Moreover, in the alternative, the I.C. Form 33 seeking a review of plaintiffs claim was filed in sufficient time, in any event, since it was filed within two years after the Full Commissions 12 April 1994 Opinion and Award was entered in this case.
10. In the Opinion and Award by the Full Commission filed 12 April 1994, the Commission found and concluded that plaintiff did not have the capacity as a result of her injury to earn the same wages in the same employment, but she did have the capacity to earn wages in some other employment. The Commission based its decision of plaintiffs wage earning capacity on evidence from a record which closed in December 1992. The prior Full Commission panel also decided that plaintiff had refused to cooperate with vocational rehabilitation, and therefore suspended her temporary total disability compensation and ordered plaintiff to cooperate with vocational rehabilitation. Defendants were ordered to continue medical treatment and physical therapy recommended by plaintiffs doctors. Among the doctors who were treating plaintiff prior to the time of this decision, and whose testimony was considered in the 1994 Opinion and Award, were Dr. Dianne Scott, Dr. Allen Friedman and others at Duke, as well as Dr. Alan Spanos, Dr. Robert Lincoln and others. Plaintiff interpreted the 12 April 1994 Full Commission Opinion and Award to be referring to the doctor currently treating plaintiff as "plaintiffs doctors; however, the Full Commission did not specifically approve Dr. Scott, Dr. Friedman, or other doctors at Duke as "plaintiffs doctors.
11. Since February, 1993, defendants, who have paid nothing for plaintiffs medical treatment since 1991, have consistently refused to pay for any medical treatment recommended by any of plaintiffs treating physicians, except Dr. Lincoln. However, Dr. Lincoln has indicated that he is not willing to treat plaintiff. Defendants have not offered or provided plaintiff any rehabilitative services, vocational or otherwise; and have not offered plaintiff re-employment. Nor have defendants given any explanation of what action plaintiff could take to bring an end to the suspension of her temporary total disability benefits.
12. From March 1993 until 21 February 1995 when plaintiff filed her I.C. Form 33 requesting a review of her case, plaintiff repeatedly requested treatment and defendants consistently refused, except to say that she could return to Dr. Lincoln, and on one occasion to say that she could be seen by Dr. Lee Whitehurst in Raleigh. At the hearing before the Deputy Commission on 10 July 1995, plaintiff testified that she was willing to go to any doctor defendants provided for her, but that she would need transportation.
13. Because of defendants refusal to provide the treatment recommended by plaintiffs physicians (Dr. Dianne Scott and others at Duke, and Dr. Kenneth Banks, among others), or to restart her disability benefits after defendants made no effort to provide vocational rehabilitation as ordered by the Full Commissions Opinion and Award of 12 April 1994, plaintiff filed a request for hearing 23 February 1995. In her I.C. Form 33, plaintiff indicated that she was claiming additional temporary total disability benefits in that she had complied with all requests that she attend medical and vocational services and that she was entitled to have defendants pay for her ongoing medical treatment, in accordance with the 1994 Award of the Commission.
14. Dr. Kenneth Banks, who testified that he had been plaintiffs family physician since 1981, testified that he considered the Duke doctors to be the ones managing the treatment of her back, and that in his opinion the treatment was appropriate, although plaintiff was not getting any better.
15. Dr. Lincoln, defendants choice for plaintiffs "treating physician, did not see plaintiff from November 1991 until her appointment 31 October 1995. At this appointment, which was attended by both plaintiff and her counsel, Dr. Lincoln specifically stated that he did not wish to see plaintiff, that he was not willing to examine plaintiff, and he did not. Dr. Lincoln refused to look at medical records or x-rays from Duke which were brought to the appointment by counsel and offered to the doctor. He asked no questions of plaintiff or of counsel, but told them that she should continue with whatever they were doing at Duke.
16. The only competent evidence from physicians who have actually examined and treated plaintiff since 1992 was from Dr. Scott and Dr. Banks. Based on that evidence, plaintiff continues to need medical treatment of the kind provided at Duke.
17. Due to the refusal of defendants chosen physician, Dr. Lincoln, to treat plaintiff, it was reasonable for plaintiff to seek her own medical treatment. Plaintiff notified defendants of the change relatively soon after she began treatment with Dr. Scott in 1991; however, defendants made it clear that they would not pay for plaintiffs treatment. For that reason, plaintiff paid for the treatment herself.
18. When plaintiffs claim was pending before the Commission in 1992 and 1993, one of the primary issues involved was the level of her cooperation with her physicians. Therefore, it was reasonable for plaintiff to presume that whether Dr. Scott would be considered a treating physician would be addressed by the Commission. Up until that point, as plaintiff was paying for the treatment herself and defendants had refused to submit the costs of that treatment for reimbursement, it was reasonable for plaintiff to wait for the Commission decision regarding Dr. Scotts treatment.
19. When the 12 April 1994 Opinion and Award of the Full Commission ordered defendants to pay for "any continued medical treatment or physical therapy recommended by plaintiffs doctors, it was reasonable for plaintiff to believe that this included Dr. Scott. However, when defendants still refused to pay bills from Dr. Scotts treatment on the grounds that she was not plaintiffs authorized treating physician, plaintiff, on 15 August 1994, sought that authorization from the Commission.
20. The undersigned find that plaintiffs request for approval of Dr. Dianne Scott as plaintiffs treating physician on 15 August 1994 was timely under the facts of this case. Plaintiffs delay in seeking approval for a change of treating physician to Dr. Dianne Scott was reasonable. Furthermore, the undersigned herein expressly authorize Dr. Scott as plaintiffs treating physician as of 15 August 1994, and further find that the treatment provided to plaintiff by Dr. Scott was reasonably required to provide relief, effect a cure, and/or to lessen her period of disability.
21. Defendants presented two witnesses at the hearing, Ms. Lynn Downs and Ms. Catherine Whisenhunt. Ms. Downs testified that she was the recruitment manager for defendant hospital, and testified that there were monitor tech positions available for which plaintiff could apply. Ms. Downs acknowledged that she knew plaintiff had been terminated by defendant-employer from their employment roster in May, 1993, but claimed she would be "eligible for rehire. She went on to testify that she knew nothing of whether plaintiffs physical restrictions would permit her to do the job.
22. Neither Ms. Downs nor Ms. Whisenhunt was able to say that plaintiff would be hired, and there was no evidence that she was offered a job. To the contrary, the evidence was that defendant-employer had terminated plaintiff, although both witnesses claimed not to know the reason for her discharge. They claimed she could re-apply, but nobody testified that she would be hired.
23. In addition, the records of defendant-employers in-house physician, Dr. Elaine Hart-Brothers indicated that as of the last time she examined plaintiff, 10 December 1991, her "restrictions [were] pending, and Dr. Hart-Brothers declined to release plaintiff to return to work. Further, Dr. Lincoln stated several times in his notes, letters and by deposition, that plaintiff was not a candidate for employment, should be placed on disability, and that he would not hire her.
24. Defendants have not demonstrated that plaintiff is employable and that suitable employment is available to her. Since this panel of the Full Commission is bound by the Commissions 12 April 1994 Opinion and Award, this Full Commission decision addresses plaintiffs employability, her cooperation with medical and vocational rehabilitation, and other issues occurring during the period after the record closed for purposes of the prior 12 April 1994 Opinion and Award. Dr. Scotts deposition in the prior case was taken on 29 July 1992 and covered treatment provided to plaintiff up to 14 July 1992. Based on medical and other evidence of record, plaintiff has not been capable of earning wages in any employment since entry of the 12 April 1994 Opinion and Award.
25. Plaintiffs refusal to cooperate with medical treatment provided by defendants ended at least by 10 July 1995, when she testified that she would be willing to go to any doctor defendants provided for her. She thereafter went to Dr. Lincoln at defendants request on 31 October 1995.
26. Plaintiff has not refused to cooperate with vocational rehabilitation since ordered to do so by the Full Commission on 12 April 1994. Also, defendants have not offered vocational rehabilitation or physical therapy to plaintiff since the Full Commission Opinion and Award dated 12 April 1994.
***********
In accordance with the directives of the North Carolina Court of Appeals, and based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is not required to show a change of condition under N.C. Gen. Stat. 97-47 because her temporary total disability compensation had only been suspended. Consequently, the issue of the extent of her permanent disability had never been determined. The controlling principle of law here was enunciated by the Court of Appeals in Beard v. BlumenthalJewish Home, 87 N.C. App. 58, 359 S.E.2d 261 (1987) ; citing Pratt v.Central Upholstery Co., 252 N.C. 716, 115 S.E.2d 27 (1960). In that case, the Court stated unequivocally that the N.C. Gen. Stat. 97-47 provisions regarding a "change of condition did not apply where plaintiff had been paid temporary total disability benefits pursuant to an I.C. Form 21 for "necessary weeks, and where the issue of permanency was not addressed. Plaintiffs case, currently before the Commission, is not distinguishable from Beard in any meaningful respect. The 1994 decision of the Full Commission in the instant case on its face is open-ended. The Award clearly anticipated that there should be future medical and vocational services provided by defendants, and that a future determination of the extent of plaintiffs loss of wage-earning capacity would have to be made. According to the Court of Appeals decision in Sanhueza v. Liberty SteelErectors, 122 N.C. App. 603, 471 S.E.2d 92 (1996), an award ceasing benefits for non-compliance with vocational efforts may not be a permanent termination of benefits. Rather, such an order may merely suspend benefits until plaintiff comes into compliance. As a matter of law, therefore, plaintiffs claim was still pending on this issue, as well as the unaddressed issue of permanency.
2. Because plaintiff was paying for the treatment provided by Dr. Scott herself throughout the pendency of her claim before the Commission, and because she reasonably believed that the issue of Dr. Scotts treatment would be addressed by the Commission in either the 1993 Deputy Commissioner or 1994 Full Commission decision, it was reasonable for her to delay seeking express authorization from the Commission to have Dr. Scott approved as her treating physician. When defendants continued to refuse to pay for Dr. Scotts treatment following the 1994 Opinion and Award of the Commission on grounds that she was not authorized, plaintiff sought that authorization within a reasonable time. Schofield v. Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980).
3. The Industrial Commission hereby authorizes a change in plaintiffs treating physician to Dr. Scott, effective retroactively to 15 August 1994. The treatment provided to plaintiff by Dr. Scott was reasonably required to provide relief, effect a cure, and/or to lessen her period of disability. N.C. Gen. Stat. 97-25.
4. Plaintiffs began to demonstrate her willingness to cooperate with her physicians and with vocational rehabilitation efforts as she progressed through the treatment of Dr. Scott. At the latest, plaintiffs refusal to cooperate with medical treatment provided by defendants had ended by 10 July 1995, when she testified that she would be willing to go to any doctor defendants provided for her, and thereafter presented to Dr. Lincoln at defendants request. Accordingly, the suspension of plaintiffs benefits based upon her failure to cooperate with her treating physician should have ended on 10 July 1995. N.C. Gen. Stat. 97-24.
5. Plaintiff has not refused to cooperate with vocational rehabilitation since being ordered to do so by the Full Commission on 12 April 1994, as defendants have not offered vocational rehabilitation services to plaintiff. Furthermore, plaintiff has been incapable of working since prior to 15 April 1994.
6. Plaintiff is entitled to and defendants are obligated to provide plaintiff such medical treatment as is reasonably required to effect a cure, provide relief and/or lessen her disability. N.C. Gen. Stat.97-25.
7. Plaintiff is entitled to continue treatment for her compensable injury with Dr. Scott and any other physician to whom plaintiff is referred by Dr. Scott. N.C. Gen. Stat. 97-25.
8. There was no evidence of any particular job available or offered to plaintiff, within her restrictions, that she would be hired to do. Evidence that there was one job plaintiff could apply for, with an employer who had already fired her and with whom she has been litigating for five years, does not meet defendants burden to rebut plaintiffs presumption of continuing disability. Saums v. Raleigh CommunityHospital, 346 N.C. 760, 487 S.E.2d 746 (1997).
***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall resume payment of temporary total disability compensation at the rate of $332.94 per week, beginning 10 July 1995, and continuing until further order of the Industrial Commission. Such amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved below.
2. A reasonable attorneys fee of twenty-five percent (25%) of the compensation due plaintiff under this AWARD is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent (25%) of accrued compensation due plaintiff under paragraph one of this Award shall be deducted from the sum to be paid plaintiff and shall be paid directly to plaintiffs counsel; and, thereafter, plaintiffs counsel shall directly receive every fourth check due plaintiff.
3. Plaintiffs request for approval for her treatment with Dr. Scott at Duke University Medical Center and any other physician to whom she is referred by Dr. Scott is hereby APPROVED, effective 15 August 1994. All treatment provided by Dr. Scott since that date is also approved and defendants shall pay for same. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of her compensable injury when bills for same have been submitted to defendants and approved pursuant to procedures established by the Commission, including treatment by any physician to which plaintiff was referred by Dr. Scott after 15 August 1994.
4. Defendants shall bear the costs of this proceeding, and shall pay Dr. Kenneth Banks an expert witness fee of $155.00.
This the ___ day of September, 2000.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER