PATRICIA L. BEARD, EMPLOYEE, PLAINTIFF v. BLUMENTHAL JEWISH HOME, EMPLOYER AND AETNA LIFE & CASUALTY CO., CARRIER, DEFENDANTS

No. 8610IC799

(Filed 1 September 1987)

**Master and Servant § 77.2— workers' compensation—Form 21 agreement not bar to further compensation**

A Form 21 agreement for compensation for a stipulated amount to begin on a specified date and "continuing for necessary weeks," signed by the parties and approved by the Industrial Commission, was an interlocutory rather than a final award within the purview of N.C.G.S. § 97-47 and thus did not bar plaintiff's claim for further compensation after disc surgery because the claim was not asserted until more than two years after plaintiff received the last payment for temporary total disability.

APPEAL by plaintiff from the Opinion and Award of the North Carolina Industrial Commission filed 27 February 1986. Heard in the Court of Appeals 7 January 1987.

On 1 May 1980 plaintiff employee injured her back by accident while assisting a patient of defendant employer, and on 5 May 1980 she came under the care of Dr. Pikula who treated her with medications and bed rest for a probable herniated nucleus pulposus. Under that conservative treatment her back condition improved and on 2 June 1980 Dr. Pikula instructed her on how to lift patients without straining her back and permitted her to return to light work the next day. On 12 June 1980 the parties executed an Industrial Commission Form 21 agreement wherein defendants admitted liability under the Workers' Compensation Act and agreed to pay compensation to plaintiff at the rate of $82.95

per week beginning 12 May 1980 and continuing for "necessary weeks." That agreement was approved by the Commission on 1 July 1980. On 7 July 1980 the Commission received an Industrial Commission Form 28B dated 2 July 1980 wherein the carrier reported that compensation for temporary total disability was paid from 5 May 1980 to 2 June 1980, that plaintiff returned to work on 3 June 1980 at her same average weekly wage, and that the report closed the case including final compensation payment. Although the carrier mailed a copy of the Form 28B to plaintiff, she did not receive it, but she did receive the carrier's last compensation check before August 1980. From 3 June 1980, when she returned to her regular job as a nurse's aide, until 17 December 1983 plaintiff missed no work because of her injury, although at various times during that period her back hurt, sometimes severely. On 19 December 1983 she was admitted to the hospital and subsequently underwent surgery for a ruptured intervertebral disc caused by the 1 May 1980 accident and reached maximum medical improvement from the injury and surgery on 29 March 1984. As a proximate result of the aforesaid accident she now has a 15 percent permanent partial disability of the back. On 2 January 1985 plaintiff asked the Industrial Commission to determine the compensation due her for total disability during the period between her surgery and recovery therefrom, and for her permanent partial disability of the back. Upon hearing the matter and after finding facts to the above effect, Deputy Commissioner Haigh concluded as a matter of law that the Form 21 agreement dated 12 June 1980 covering plaintiff's initial inability to work was a "final award" within the contemplation of G.S. 97-47 and that under the terms of that statute her claim was barred. Upon plaintiff appealing the Full Commission, Commissioner Clay dissenting, affirmed the opinion of the Deputy Commissioner.

*Pfefferkorn, Pishko & Elliot, by Robert M. Elliot, for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Reid C. Adams, Jr., for defendant appellees.*

PHILLIPS, Judge.

None of the above stated facts are in dispute and the only question raised by this appeal is whether the Form 21 agreement

referred to was a final award within the contemplation of G.S. 97-47. If it was, plaintiff's claim for further compensation is necessarily barred, as the Commission ruled, because it was not asserted until more than two years after the last payment for temporary total disability was received in 1980. In pertinent part G.S. 97-47 provides as follows:

> [O]n the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, . . . [N]o such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article . . .

Our Supreme Court has held that the "award" referred to in this statute, which the Industrial Commission may not review after two years from the date of the last payment of compensation thereunder, is a final award, *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 181 S.E. 2d 588 (1971), and that the statute does not apply to an interlocutory award. *Pratt v. Central Upholstery Co., Inc.*, 252 N.C. 716, 115 S.E. 2d 27 (1960). Since any agreement to pay workers' compensation benefits when approved by the Commission is an award or its equivalent, *White v. Shoup Boat Corp.*, 261 N.C. 495, 135 S.E. 2d 216 (1964), the Form 21 agreement entered into by the parties in June 1980 and approved by the Commission was certainly an award; but in our opinion it was an interlocutory award beyond the purview and intent of G.S. 97-47. The award was interlocutory because it settled only the preliminary questions of jurisdiction and temporary disability and left unresolved the extent of plaintiff's permanent disability, if any. The Form 21 agreement the parties executed and the Commission approved in substance stated only that: The parties were bound by the Workers' Compensation Act; plaintiff hurt her back by accident on 1 May 1980 and was then disabled; her average weekly wage was $124.43 and defendants would pay her $82.95 per week beginning 12 May 1980 and "continuing for necessary weeks." The agreement said nothing about plaintiff either having or not having a permanent disability. When it was approved the only medical information bearing upon plaintiff's condition that the Commission had was a Form 25 signed by Dr. Pikula, which stated that plaintiff had a "probable herniated nucleus pulposus, L4-5 on the left." Though the form asked the doctor three ques-

tions—Is there any "permanent defect?", "Does this terminate the patient's treatment?", "Can the employee resume work without risk?"—none of these questions were answered. Obviously, the parties were not in position to agree, and did not agree, that plaintiff had no permanent disability; and the Commission had no basis for approving, and did not approve, an agreement that finally resolved plaintiff's rights. Terminating an injured worker's right to compensation for permanent disability is not done in any such manner and on such a basis.

The facts of this case are quite similar to those in *Pratt v. Central Upholstery Co., Inc.*, 252 N.C. 716, 115 S.E. 2d 27 (1960). In that case: The claimant suffered a temporarily disabling injury to her coccyx in April 1957 and soon thereafter entered into a Form 21 agreement with the carrier providing for compensation "for legal weeks," which the Commission approved on 20 May 1957; in August, 1957 the claimant's doctor permitted her to return to work at a different, less strenuous job, and submitted to the Commission a Form 25 in which he answered the question whether or not there would be any permanent disability with three question marks; on 19 August 1957 plaintiff received the last payment called for by the Form 21 agreement; in April 1958 her doctor filed a report indicating that she had a permanent partial disability; and on 25 November 1958 plaintiff requested a hearing to determine the compensation due her because of that disability. At the hearing defendants contended that the claim was barred under G.S. 97-47, because it was not asserted within a year after her last payment as the statute then required. When the case finally got there our Supreme Court ruled that the claim was not barred by G.S. 97-47. In doing so the Court noted that the Commission was in no position either to make a proper award or approve an agreement until the extent of plaintiff's permanent disability, if any, was determined, and that the Commission's approval of the Form 21 agreement in the absence of the essential medical information was merely—

> an adjudication that employer was liable for such compensation as employee was entitled to receive under the Act, the date when compensation began, the amount of weekly payments for temporary total disability, and nothing more. It was only a preliminary and interlocutory award. It does not purport to fix and determine the full amount of compensation

to which employee was entitled . . . The blank spaces in paragraph 7 of the agreement indicate that employee had not returned to work and the extent of partial incapacity and permanent disability, if any, had not been determined. After the approval of the agreement on 31 May 1957 the action was still pending for a final award. 'A claim for compensation lawfully constituted and pending before the Commission may not be dismissed without a hearing and without some proper form of adjudication. No statute of limitations runs against a litigant while his case is pending in court.' (Citation omitted.)

*Id.* at 720-721, 115 S.E. 2d at 32. As in that case, since plaintiff's claim for further compensation has not been resolved either by an agreement of the parties, a hearing on the merits or any other "proper form of adjudication," it is not barred by G.S. 97-47.

In concluding otherwise the Commission emphasized that at the time Pratt returned to work, a medical report reflected there was still a question as to whether the injury had resulted in any permanent partial disability and that no such report exists in this case. But the *absence* of medical information is hardly a sound basis for concluding that plaintiff agreed to something she manifestly did not agree to or that the Commission's approval of the agreement was based upon a knowledge of plaintiff's condition, as our law requires. Furthermore, the medical report submitted in this case, though not adorned with question marks as in *Pratt*, *did* raise a question as to plaintiff having a permanent disability; for it stated that plaintiff probably had a "herniated nucleus pulposus," a condition that is known to often result in surgery, a prolonged convalescence and a stiff, disabled back, but contrary to its duty the Commission sought no answer to the question. In deeming the Form 21 agreement a "final" award the Commission also emphasized that plaintiff resumed her regular job and stayed on it for more than three years; but contract terms are fixed and binding, if at all, when they are agreed to, they are not enlarged by accretions of time and later events. What resulted from plaintiff returning to work at the same wages as before was neither an estoppel nor a waiver, but a mere presumption of fact that she was not permanently disabled; a presumption that was overcome by evidence showing that she is in fact disabled, as the Commission found. *Pratt v. Central Upholstery Co., Inc.*, 252 N.C. 716, 115 S.E. 2d 27 (1960). Nor is it of any legal significance that the period

of three years went by between the end of plaintiff's temporary total disability and her request to determine the permanent disability question; for pending cases are not resolved by time, they are resolved by agreement or adjudication, and during that long period defendants took no steps to achieve either a final agreement or adjudication. And, of course, the carrier's unilateral effort to close the file and foreclose the adjudication of plaintiff's rights is totally irrelevant to the question presented.

G.S. 97-47 has no application to the circumstances of this case for another reason. As its terms plainly show, it was enacted to address the commonly known fact that injuries which first appear to have little or no permanent effect sometimes turn out to be more disabling than expected, while injuries that initially appear to be totally disabling sometimes improve, or are even overcome entirely by persons with unusual fortitude, strength, or nervous systems. What the statute does and does not do is equally plain! It establishes conditions under which otherwise final disability evaluations can be reviewed and revised when changes occur; it does not establish either a procedure or a limitations period for processing unresolved claims for permanent disability. Thus, determining plaintiff's claim for permanent disability is not forbidden by the statute, and it is absurd to suppose that such a determination would be a "review" under the statute of the earlier interlocutory award. The earlier award for a six weeks period of temporary disability is over and done with; it can neither be reviewed nor revised, and G.S. 97-47 does not relate to it.

In dismissing plaintiff's claim the Full Commission relied primarily on *Watkins v. Central Motor Lines, Inc.,* 279 N.C. 132, 181 S.E. 2d 588 (1971). In that case plaintiff suffered a temporarily disabling injury in May 1967 and the parties signed a Form 21 agreement in which the carrier admitted liability and agreed to pay compensation for "necessary weeks." When plaintiff received his last temporary disability payment on 18 January 1968 he signed a final receipt on Commission Form 28B which stated that no further compensation would be paid unless plaintiff made request for a hearing based on a change of condition within a year. After a year had passed, the statutory period at that time, plaintiff's doctor reported that he was permanently disabled to some extent because of the accident involved, but the Court held that

the claim was barred by G.S. 97-47. The distinctions between *Watkins*, the present case, and *Pratt* are both obvious and significant: In *Watkins*, as the Court emphasized, the claimant received and signed a Form 28B which by its terms closed the case; but in this case plaintiff neither signed nor received the Form 28B defendant mailed, and in *Pratt*, as the Court emphasized, the claimant was not requested to sign a closing receipt. In our view, a case in which a claimant expressly signs his final rights away with the Commission's approval does not control a case in which the claimant made no such agreement. Furthermore, in *Watkins* the medical report that went along with the approved closing receipt stated clearly that plaintiff had no permanent disability; while in this case there was no indication whatever that plaintiff was not disabled, the implication, if anything, being that she might be disabled since the condition reported often does result in disability. Thus, while the Commission had medical grounds for approving the signed closing receipt as a final award in *Watkins*, it had no medical basis whatever for approving the Form 21 agreement in this case as being anything other than an interlocutory award.

Therefore, we reverse the Commission's Opinion and Award holding that the Form 21 agreement entered into in June 1980 was a final award and that plaintiff's claim is thus barred by the provisions of G.S. 97-47; and we remand the matter to the Commission for the entry of a final award in accord with the Commission's determination that plaintiff has a 15 percent permanent partial disability of the back due to the accident referred to, and for a determination of the compensation due for her additional period of temporary total disability following the surgery in December 1983.

Reversed and remanded.

Judges ARNOLD and ORR concur.