***********
The Full Commission has reviewed the Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence. The Full Commission modifies in part and affirms in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed at all relevant times between plaintiff-employee and defendant-employer.
3. Plaintiff's average weekly wage is $240.00, which yields a compensation rate of $160.00.
4. Plaintiff sustained an injury by accident on or about June 13, 1996.
5. Plaintiff's injury arose out of and in the course of his employment and is compensable.
6. All Industrial Commission forms and plaintiff's medical records were stipulated into evidence.
7. Plaintiff's Exhibit 3, consisting of answers to interrogatories and a printout of benefits paid to plaintiff by defendants, was received into evidence.
 **********
Based upon all of the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 32 years of age, having a date of birth of July 13, 1968. He has a high school degree. Plaintiff began working for defendant-employer in April 1996, in a position stacking boxes. Prior to that, he had done similar work for Butterball Turkey.
2. On June 13, 1996, plaintiff sustained an admittedly compensable injury to his back. As he was lifting a box weighing about 45 pounds, he felt pain in his back, and he dropped the box. Plaintiff's injury was accepted as compensable on a Form 60.
3. Plaintiff was seen that same day at Pender Memorial Hospital with complaints of low back pain, left hip pain and left thigh numbness. He was diagnosed with a muscle strain and given restrictions of no lifting more than 10 pounds.
4. Plaintiff was seen for follow-up by Dr. Mott Blair on June 19, 1996. Dr. Blair assessed a back sprain/strain and referred plaintiff for physical therapy. At his follow-up visits with Dr. Blair in July 1996, plaintiff reported improvement in his pain symptoms. By August 2, 1996, Dr. Blair had released plaintiff to return to work, but advised that he wear a lifting belt and that plaintiff increase his work hours gradually from 4 hours up to 8 hours a day.
5. On or about August 28, 1996, plaintiff experienced an increase in his symptoms after sweeping the floor and dumping debris into the trash. He returned to see Dr. Blair the next day, with pain in his lower back and into his left thigh. Dr. Blair assessed recurrent back sprain and spasm and sent plaintiff back to physical therapy. At a subsequent appointment on October 4, 1996, Dr. Blair ordered a lumbar CT scan.
6. On October 21, 1996, plaintiff came under the care of Dr. Ira Hardy, an orthopedic spine surgery specialist. Plaintiff complained of pain in his lower back, which initially radiated into both legs, but was primarily on the left side. Dr. Hardy reviewed plaintiff's CT scan at plaintiff's next visit on October 24, 1996. The radiologist interpreted the CT scan as showing herniated discs at L4-5 and L5-S1. However, Dr. Hardy was of the opinion that these were disc protrusions, not actual herniations.
7. Dr. Hardy testified at his deposition that although his notes reflect that plaintiff was complaining about his left side, this notation might have been a typographical error. The diagnostic studies, including CT scan, myelogram, and MRI tended to show central and right-sided bulging or herniation at L5-S1, which should lead to symptoms on the right, rather than left side. Dr. Hardy confirmed through his testimony that these diagnostic tests gave no indications of any defects at the L3-4 level of the spine.
8. Plaintiff remained under Dr. Hardy's care throughout 1996 and into 1997. Dr. Hardy initially recommended a spinal fusion at L4-5, with insertion of a back cage. The surgery was scheduled for March 12, 1997, but was cancelled when plaintiff was unable to get there. Plaintiff testified that he was not comfortable with Dr. Hardy doing the surgery.
9. The testimony of Dr. Hardy also establishes that plaintiff's back and leg pain improved during his treatment. By March 24, 1997, plaintiff reported only minimal backaches after sitting for a long time, with no leg pain. Dr. Hardy determined that surgery was not necessary and recommended that plaintiff continue his exercises. Plaintiff did not return to Dr. Hardy after the March 24, 1997 visit.
10. Dr. Hardy is of the opinion and the Commission finds that plaintiff's disc protrusion at L4-5 was traumatic in origin and was caused by the incident of June 13, 1996. The only disc defects identified during Dr. Hardy's treatment were at L4-5 and L5-S1. Dr. Hardy is of the opinion that the herniations later identified at L3-4 were not present during his treatment in 1996-97 and are not causally related to plaintiff's accident.
11. On May 7, 1997, plaintiff came under the care of Dr. Thomas Melin at Coastal Neurosurgical Associates. It appears this doctor's visit may have occurred because plaintiff could not get an appointment with Dr. Hardy as soon as requested. The diagnostic studies ordered by Dr. Melin, including MRI and CT scan, showed no change in plaintiff's lumbar spine from prior studies. Dr. Melin, in his testimony, confirmed that there was no evidence of a defect at the L3-4 level of plaintiff's spine when he treated plaintiff during this period.
12. In the fall of 1997 plaintiff participated in a functional capacity evaluation (FCE) that placed him in the heavy work category. As of October 20, 1997, Dr. Melin released plaintiff to return to work in his prior line of employment. Dr. Melin recommended that plaintiff limit his lifting to 60 pounds or less, and that plaintiff change positions between sitting and standing. Plaintiff was at maximum medical improvement and Dr. Melin assessed a five percent permanent functional impairment rating of plaintiff's back.
13. After his release to return to work, defendant-employer terminated plaintiff because it had no jobs available within plaintiff's restrictions. Defendants assigned a rehabilitation professional, Rachel Bowling, to assist plaintiff in his job search. Plaintiff was paid temporary total disability compensation for periods beginning June 14, 1996 and continuing until plaintiff returned to work on December 11, 1997 for Chenello Pizza as a delivery person, earning the same or greater wages. Plaintiff worked at Chenello Pizza until April 1998 when he left that job over a dispute with his boss. Plaintiff then worked at various jobs through Manpower for about a year and a half. He worked for Action Temporary, driving a forklift for about 3 weeks. Finally, plaintiff worked for Dixie General doing construction, primarily concrete work, a position in which he was lifting up to 50 pounds. Plaintiff worked from December 1997 on a continuous basis, earning the same or greater wages, until 2000 when he again went out of work.
14. Plaintiff did not seek medical treatment for his back in 1998 or 1999. He next returned to see Dr. Melin on March 13, 2000, with complaints of back and right leg pain. Dr. Melin ordered additional diagnostic studies and ultimately diagnosed plaintiff with a herniated disc at L3-4.
15. On September 21, 2000, plaintiff underwent surgery, a lateral facetectomy at L3-4, performed by Dr. Stuart Lee. On November 1, 2000, Dr. Lee released plaintiff to return to work. He also rated plaintiff with a ten percent permanent functional impairment to his back based upon the L3-4 surgery. Dr. Lee did not causally relate plaintiff's L3-4 injury to the original compensable injury by accident.
16. The greater weight of the evidence of record, in particular the testimony of the treating physicians, fails to establish a causal connection between plaintiff's compensable accident of June 13, 1996 and the L3-4 disc herniation discovered in 2000. There is no medical evidence to establish that the disc herniation at L3-4 was present in 1996-97 or that plaintiff's back injury in 1996 was the cause of the subsequent herniation at L3-4.
17. The greater weight of the medical evidence also fails to establish that any ongoing complaints of back pain are causally related to plaintiff's accident of June 13, 1996, rather than to the back surgery of September 2000. Plaintiff was able to continue working in medium to heavy-duty work until his subsequent back problems developed at a different spinal level in 2000. The greater weight of the evidence fails to establish that any disability or wage loss after 1997 was causally related to plaintiff's compensable injury by accident.
18. The Form 28B dated December 12, 1997, which was not filed with the Industrial Commission until September 9, 1998, reflects payment to plaintiff for temporary total and temporary partial benefits, as well as medical and rehabilitation benefits. The last compensation check was forwarded to plaintiff on December 15, 1997. Defense counsel argued to the Commission that since plaintiff did not file his Form 33 with the Commission until July 17, 2000, plaintiff's claim was filed more than two years after the last payment of compensation and is therefore barred.
19. While the Form 28B purportedly closed the case, defendants have not paid plaintiff for the five percent permanent functional impairment rating to his back, which is causally related to the June 13, 1996 accident.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about June 13, 1996, plaintiff sustained an admittedly compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. As the result of the compensable injury by accident, plaintiff was entitled to receive and defendants have paid temporary partial and temporary total disability compensation for the periods shown on the Form 28B filed with the Commission. N.C. Gen. Stat. § 97-29.
3. As the result of the compensable injury by accident, plaintiff is entitled to payment by defendants for the five percent permanent functional impairment to his back. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff's claim for payment of the permanent partial disability rating to his back is not time barred because the two-year limitation does not apply under the facts of this case. N.C. Gen. Stat. § 97-47. Although plaintiff's last compensation check was issued on December 11, 1997, and his Form 33 was not filed until July 17, 2000, this case is not a change-of-condition case. N.C. Gen. Stat. § 97-47 does not apply where plaintiff has been paid temporary total compensation benefits and where the issue of permanency has not been addressed. Beard v.Blumenthal Jewish Home, 87 N.C. App. 58, 359 S.E.2d 261 (1987), disc.rev. denied, 321 N.C. 471, 364 S.E.2d 918 (1988).
5. Plaintiff is presumed to elect the more munificent remedy provided by N.C. Gen. Stat. § 97-31, and therefore defendants are entitled to a credit for temporary total disability compensation paid after plaintiff reached maximum medical improvement on October 20, 1997. McLean v. EatonCorp., 125 N.C. App. 391, 481 S.E.2d 289 (1997).
6. Plaintiff is not entitled to additional compensation as a result of the herniated disc at L3-4 for which plaintiff was treated and had surgery in the year 2000 and which is not causally related to the compensable injury by accident. N.C. Gen. Stat. §§ 97-2(19);97-25.
7. Plaintiff is entitled to have defendants pay for all medical treatment arising from his June 13, 1996 injury by accident. N.C. Gen. Stat. § 97-25.
 **********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $160.00 per week for 15 weeks as compensation for his five percent permanent functional impairment to his back. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below. This award is subject to a credit for temporary total disability compensation paid by defendants for the period October 20, 1997 through December 11, 1997.
2. An attorney's fee of twenty-five percent of the lump sum due plaintiff is approved for plaintiff's counsel and shall be deducted from the lump sum and paid directly to counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident.
4. Defendants shall pay the costs, including all expert witness fees previously approved.
This the ___ day of October 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER