***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses in part and affirms with modifications in part the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties agreed that defendant-carrier has paid benefits as outlined in the prior Industrial Commission Opinion and Award filed on 23 February 2001 by former Deputy Commissioner, now Commissioner, Pamela T. Young.
2. Insurance Company of the State of Pennsylvania was the carrier on the risk at all relevant times.
3. The date of plaintiff's injury was 9 December 1999.
4. At all times relevant hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. On 9 December 1999, plaintiff's average weekly wage was $280.00, which yields a compensation rate of $186.76.
6. At the hearing before the deputy commissioner, the parties submitted the following, which were admitted into the record: (a) medical records; (b) the depositions of Dr. Kimberly Washington and Dr. Raymond C. Sweet; and (c) Plaintiff's Answers to Defendants' First Set of Interrogatories.
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACTS
1. At time of the hearing before the deputy commissioner, plaintiff was fifty-three (53) years of age, with his date of birth being 8 August 1949. Plaintiff is a high-school graduate, and attended Western Piedmont Community College for one year, studying psychology and criminal justice.
2. Plaintiff's compensable injury of 9 December 1999 occurred while he was working for defendant-employer in shipping and receiving. On that date, plaintiff pulled a pallet off a stack of pallets at an overhead level, and experienced the immediate onset of pain in his back, shoulders and legs.
3. Dr. Raymond Sweet diagnosed plaintiff as having a ruptured disc in his lumbar spine, for which microdiscetomy surgery was performed on 3 June 2000. On 2 August 2000, Dr. Sweet opined that plaintiff had reached maximum medical improvement with an eight percent (8%) permanent partial disability rating, and released him to return to work with a forty (40) pound lifting restriction.
4. Dr. Sweet's final post-operative examination of plaintiff was on 27 December 2000. At that time, plaintiff's condition had improved, and he was experiencing no left side weakness or pain. Accordingly, Dr. Sweet released plaintiff from his care. During his deposition, Dr. Sweet confirmed that at no time had he totally removed plaintiff from work after releasing him to return to restricted work in August 2000.
5. Deputy Commissioner (now Commissioner) Pamela T. Young filed a prior Opinion and Award in this claim on 23 February 2001. In that Opinion and Award, plaintiff's claim for an injury to his back occurring on 9 December 1999 was found to be compensable. Plaintiff was awarded total disability compensation from 21 December 1999 to 31 December 1999 and from 3 June 2000 to 11 October 2000. He was also awarded temporary partial disability compensation from 7 January 2000 to 3 June 2000. Additionally, plaintiff was given the option of choosing between compensation for his eight percent (8%) permanent partial disability rating under N.C. Gen. Stat. § 97-31 or wage loss under N.C. Gen. Stat. § 97-30.
6. Defendants did not appeal the Opinion and Award of the deputy commissioner. However, plaintiff did not timely receive the benefits as outlined by the Opinion and Award filed 23 February 2001. On 15 October 2001, plaintiff filed a motion for sanctions for defendants' untimely payment of compensation awarded under the 23 February 2001 Opinion and Award. On 8 November 2001, Tracey Weaver, the Executive Secretary of the Industrial Commission ordered defendants to pay to plaintiff amounts due pursuant to the 23 February 2001 Opinion and Award and granted plaintiff's motion for sanctions of 10% pursuant to N.C. Gen. Stat. § 97-18. Executive Secretary Weaver also ordered defendants pay a ten percent (10%) penalty on 29 September 2003 for failure to timely pay a medical bill that had been properly submitted for payment.
7. Subsequently, plaintiff accepted a check from defendants in the amount of $6,323.16. The Form 28B report of compensation paid does not clarify how defendants calculated the amount due plaintiff. Plaintiff filed a Form 33 Request for Hearing to seek additional benefits.
8. Defendants contend that the receipt of the check was plaintiff's election of benefits under the prior Opinion and Award filed by former Deputy Commissioner Young and that plaintiff has been paid all permanent partial disability compensation he is due for the eight percent (8%) rating to his back.
9. Based on the greater weight of the evidence, although defendants paid plaintiff $6,323.16, their obligation to pay plaintiff for permanent partial disability or wage loss was not extinguished. The $6,323.16 defendants paid should have included: (a) total temporary disability compensation from 21 December 1999 through 31 December 1999 and 3 June 2000 to 11 October 2000; (b) temporary partial disability compensation from 7 January 2000 to 3 June 2000; (c) a ten percent (10%) penalty for untimely payment of the award; (d) interest on the award at the rate of eight percent (8%) from the date of the hearing before the deputy commissioner; and (e) a ten percent (10%) penalty on past due medical payments.
10. Defendant further contends that the parties agreed that defendant-carrier had paid benefits as outlined in the Industrial Commission Opinion and Award filed on 23 February 2001 in a Pre-Trial Agreement signed by both parties on 17 March 2003 and they are not further obligated to make any additional payments to plaintiff. Defendant did pay all amounts specifically awarded to plaintiff pursuant to the 23 February 2001 Opinion and Award. However, benefits for permanent partial disability or wage loss was not awarded. Plaintiff was instructed to elect between the two remedies and the deputy commissioner contemplated a future payment by defendants to plaintiff once plaintiff elected his remedy. The instruction to elect benefits does not affect defendants' obligation to pay the benefits specifically awarded.
11. It does not appear that plaintiff was ever paid for the eight percent (8%) rating to his back or, in the alternative, for wage loss, if he so elected.
12. Benefits under N.C. Gen. Stat. § 97-31 is the more munificent remedy for plaintiff.
13. Defendants contributed to the confusion surrounding what the $6,323.16 payment to plaintiff covered by filing two erroneous Forms 28B. On 29 August 2002, defendants filed an inaccurate Form 28B stating that the $6,323.16 was paid pursuant to a compromise settlement agreement. On a Form 28B dated 21 November 2003, defendants again inaccurately stated that $6,323.16 was paid pursuant to a compromise settlement agreement. There was no compromise settlement agreement in this case. Defendant did not itemize on either Form 28B the amount plaintiff was being paid for temporary total or temporary partial disability.
14. Following his compensable injury, plaintiff returned to work for a period of time with defendant-employer, but was terminated for inappropriate behavior on 20 December 1999. At the time the previous Opinion and Award was filed, plaintiff was employed at the McLeod Center, a rehabilitation center for adolescents, having started his employment in that capacity on 11 October 2000. With his job at the McLeod Center, plaintiff earned wages equal to or greater than the wages he earned at the time of his 9 December 1999 injury. Plaintiff was subsequently dismissed from his position with the McLeod Center for damaging one of the facility's vans.
15. Plaintiff next found work at Hope Haven as a program assistant on 1 March 2001. Plaintiff worked in that capacity until on or about 28 February 2002, when he was terminated for failing to respond to an emergency page. Although plaintiff asserts that his termination was related to his physical condition and the sleepiness caused by his medications, the credible evidence of record does not support this contention.
16. Ms. Alice Harrison, Hope Haven's executive director, testified that prior to the hearing date, plaintiff had never raised the issue of medications as an explanation for sleeping through the page, but had instead consistently denied that he was paged at all. Ms. Harrison also testified that plaintiff never complained of back problems during the period of his employment, and did not walk with a limp as he did at the hearing. The Full Commission accepts Ms. Harrison's testimony as credible.
17. Following his termination by Hope Haven at the end of February 2002, plaintiff remained unemployed until May 2002, when he began working for the Salvation Army as a driver. He was removed from that position due to a traffic violation. Plaintiff then began working at the Salvation Army's thrift store where he assisted with receiving clothing, and moving racks of clothes in the store. Plaintiff testified that he was forced to discontinue that job because he was unable to perform it physically. Since ending his employment with the Salvation Army, plaintiff has remained unemployed. Plaintiff has sought employment with nursing homes and other employers, but has not been offered a position. Plaintiff believes that the most common reason he has not received job offers is his back condition and history of having undergone a back surgery. No evidence supporting plaintiff's purported job search was produced, and his earlier answers to defendants' interrogatories make no reference to any job search.
18. On 18 March 2001, plaintiff suffered a stroke. He had previously suffered a stroke in the mid 1990s, and has been treated for high blood pressure since early adulthood. Plaintiff's March 2001 stroke was on the right side of the brain, which affected the left side of his body. At the time of his stroke in 2001, he was unable to speak for some time, was hospitalized, and ultimately underwent a catheterization at which point the clot was dissolved. After the stroke, plaintiff suffered from left-sided weakness, pain in his left leg, dragging of the left foot, and difficulty with sustained walking and climbing stairs. Plaintiff also underwent abdominal aortic aneurysm repair surgery in the autumn of 2001, which left plaintiff with residual abdominal weakness. Based on the greater weight of the evidence, the stroke plaintiff suffered in March 2001 and his abdominal aortic aneurysm were not caused by or related to his compensable back injury.
19. Subsequent to his stroke, plaintiff returned to Dr. Sweet on 20 June 2001. At that time plaintiff was experiencing left sided weakness, and dragging of the foot, which Dr. Sweet attributed to the stroke. Dr. Sweet continued to monitor and examine plaintiff through 22 April 2002, when he again released him from his care and assigned a ten percent (10%) permanent partial disability rating to plaintiff's back.
20. Dr. Sweet's final examination of plaintiff was on 11 July 2002, at which time he noted that there was no change in the condition of plaintiff's back. Dr. Sweet also noted that plaintiff had undergone abdominal aortic aneurysm repair surgery. At this appointment, plaintiff's long-term restrictions were reduced by Dr. Sweet to no repetitive bending and no lifting over fifteen (15) pounds.
21. Regarding the issue of a change in plaintiff's physical condition, Dr. Sweet testified that the main changes he detected from August 2000 to July 2002 were related to left-sided weakness from plaintiff's stroke, and weakness from the abdominal muscles from the abdominal aneurysm surgery. He was unable to give an opinion on whether he would have reduced plaintiff's work restrictions if the stroke and aneurysm had not occurred. However, Dr. Sweet made it clear that plaintiff's back condition had not changed since he assigned the eight percent (8%) rating in August 2000. As for the change in ratings, during his deposition, Dr. Sweet explained that the reason he assigned a ten percent (10%) rating in April 2002 was because he could not locate any documentation of his prior eight percent (8%) rating, and that the earlier eight percent (8%) rating was appropriate.
22. The credible evidence of record establishes that plaintiff's disability or incapacity to work and earn wages after 23 February 2001 is attributable to plaintiff's stroke, his abdominal aortic aneurysm repair surgery, or from being terminated for reasons unrelated to his compensable back injury. Since plaintiff has not been paid all compensation he is entitled to receive for his compensable injury, his claim remains open and he is not required to prove change of condition.
23. In the alternative, plaintiff has not sustained any change of condition resulting from his 9 December 1999 compensable back injury that affected his level of disability or his ability to earn the same wages since entry of the prior Opinion and Award of the Commission on 23 February 2001.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since plaintiff was never fully paid pursuant to the prior Opinion and Award filed on 23 February 2001, plaintiff's case remained open and plaintiff did not need to show change of condition. See Beard v. Blumenthal Jewish Home, 87 N.C. App. 58,359 S.E.2d 261 (1987)
2. Benefits under N.C. Gen. Stat. § 97-31 is the more munificent remedy for plaintiff, who is entitled to permanent partial disability compensation for the eight percent (8%) rating to his back at the compensation rate of $186.76 for 24 weeks. N.C. Gen. Stat. § 97-31.
3. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his compensable injury, which tends to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff in a lump sum permanent partial disability compensation at the rate of $186.76 per week for 24 weeks.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury, for so long as such treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, when bills for same have been submitted and approved by the Commission.
3. An attorney's fee of twenty-five percent (25%) of the amount awarded plaintiff in paragraph 1 is approved for plaintiff's attorney.
4. Defendants shall pay the costs of this action.
This the ___ day of August 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER