***********
Based upon review of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 STIPULATIONS
1. On July 3, 1998, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On July 3, 1998, an employment relationship existed between plaintiff and defendant. Defendant was a duly qualified self-insured employer.
3. On July 3, 1998, plaintiff sustained a back injury by accident arising out of and in the course of her employment.
4. Plaintiff's average weekly wage is $807.75, which yields a compensation rate of $532.00 per week, the maximum compensation rate for 1998.
5. Defendant filed an Industrial Commission Form 60 admitting the compensability of and its liability for plaintiff's July 3, 1998 injury. Defendant made payments of compensation to plaintiff pursuant to N.C. Gen. Stat. § 97-18(b).
6. As a result of the accident, plaintiff was totally disabled from July 9, 1998 through October 31, 1998. During this period of time, defendant paid plaintiff compensation pursuant to N.C. Gen. Stat. § 97-29 at the rate of $532.00 per week.
7. Plaintiff returned to work for defendant on November 1, 1998.
8. As a result of her July 3, 1998 back injury, plaintiff again became totally disabled on April 4, 2000. Plaintiff returned to work for defendant on June 19, 2000. From April 4, 2000 through June 18, 2000, defendant paid plaintiff compensation pursuant to N.C. Gen. Stat. § 97-29 at the rate of $532.00 per week.
9. On September 29, 2000, defendant completed an Industrial Commission Form 28B stating that plaintiff's last compensation check was forwarded on June 21, 2000 and that September 18, 2000 was the last date medical compensation was paid. This Form 28B was filed with the Industrial Commission.
10. On August 29, 2002, plaintiff filed an Industrial Commission Form 18M, making a claim for additional medical compensation. On the same date, plaintiff filed an Industrial Commission Form 33, making a claim for additional disability compensation.
11. The following exhibits were admitted into the evidence of record by the parties at the hearing before Deputy Commissioner Hall:
a) Certified copy of Industrial Commission's file.
b) Defendant's discovery responses.
c) Plaintiff's discovery responses.
d) Plaintiff's medical records.
 e) An April 25, 2003 letter from RBC Centura regarding plaintiff's attendance and wage records from RBC Centura for the period from July 2002 through December 2002.
12. The issues before the Commission are whether plaintiff's claim for additional disability compensation is barred by the time limitation in N.C. Gen. Stat. § 97-47, whether plaintiff's L5-S1 herniated disc was causally related to her July 3, 1998 compensable injury, and what, if any, additional indemnity and medical compensation is due plaintiff.
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 40 years old. Plaintiff became employed by defendant as a flight attendant in 1985.
2. On July 3, 1998, plaintiff was working as a flight attendant in London. While walking down a stairway carrying her luggage, plaintiff slipped and fell, landing on her buttocks. Plaintiff had immediate onset of right leg pain, right hip pain, and low back pain.
3. Defendant admitted liability for plaintiff's injury by filing an Industrial Commission Form 60. Pursuant to the Form 60, defendant paid plaintiff compensation for total disability from July 9, 1998 through October 31, 1998 at the rate of $532.00 per week. During this period of time, plaintiff received conservative treatment at Raleigh Orthopaedic Clinic. During her treatment, plaintiff continued to experience low back pain with radiation into her leg. Plaintiff also experienced numbness and tingling.
4. Plaintiff returned to work as a flight attendant for defendant on November 1, 1998. After returning to work, plaintiff continued to experience low back pain, with instances of more severe pain. Plaintiff was never pain free.
5. In April 2000, plaintiff experienced a significant flare-up of pain that rendered her totally disabled beginning April 4, 2000. On May 1, 2000, plaintiff returned to Raleigh Orthopaedic for treatment of her low back and leg pain and received conservative treatment from Dr. Dwayne E. Patterson which involved medications and physical therapy. Dr. Patterson is a specialist in physical medicine and rehabilitation.
6. On June 5, 2000, the date Dr. Patterson last evaluated plaintiff, she continued to have lower back pain and SI joint dysfunction and plaintiff's physical abilities continued to be impaired. Dr. Patterson continued physical therapy for another few weeks and allowed her to return to regular work in two weeks, noting that he would see her back in four to five weeks.
7. On September 20, 2000, Dr. Patterson received a letter from defendant asking him to complete an Industrial Commission Form 25R, Evaluation for Permanent Impairment. Defendant did not provide plaintiff with a copy of this letter to Dr. Patterson. Dr. Patterson did not complete the Form 25R because he had not evaluated plaintiff since June 5, 2000 and therefore felt he could not determine the cause of plaintiff's recurrent symptoms after she left his care.
8. In response to defendant's inquiry, Dr. Patterson wrote in his office note dated September 20, 2000 that he had not heard from plaintiff since June 5, 2000. His note further reads: "At this point certainly if she is doing her regular job and not having difficulty, then I would certainly go ahead and release her and consider her at maximum medical improvement with no permanent partial disability." Plaintiff was not provided a copy of Dr. Patterson's note.
9. At his deposition taken July 11, 2003, Dr. Patterson testified that having been provided with plaintiff's continued symptoms, he believed that on September 20, 2000 plaintiff continued to be physically impaired and retained some percentage of permanent impairment, although he had not actually assigned her a percentage rating.
10. Defendant completed a Form 28B stating that plaintiff's last indemnity compensation was paid on June 21, 2000 and that the last medical compensation was paid on September 18, 2000.
11. After returning to work as a flight attendant with defendant on June 19, 2000, plaintiff continued to experience low back pain. She had intermittent periods of increased pain, but continued to work. While working as a flight attendant, plaintiff restricted herself from work activities she performed prior to her injury. She no longer worked the galley position because it required more bending and lifting than the other flight attendant positions. Likewise, plaintiff no longer assisted passengers with lifting and placing luggage and other items into the overhead luggage compartments.
12. Following the tragic events of September 11, 2001, plaintiff elected to resign from her employment as a flight attendant for defendant. Plaintiff began working as a teller for RBC Centura beginning January 28, 2002. Her job as a teller did not involve heavy lifting. During the times relevant to this claim, plaintiff worked 40 hours per week and earned $12.50 per hour.
13. During the spring of 2002, plaintiff's low back pain began to increase again. On June 19, 2002, plaintiff presented to a family physician, Dr. Anjali Sues. Plaintiff described her symptoms as being the same as they were when she fell in 1998. Dr. Sues prescribed a Medrol dosepak.
14. Thereafter, plaintiff began receiving treatment from chiropractor Dale Patrick. Dr. Patrick suspected that plaintiff had a herniated disc at L5-S1. He treated her for approximately two weeks, during which time her condition continued to worsen.
15. As of July 22, 2002 plaintiff was no longer able to work at RBC Centura and went out of work on sick leave.
16. On July 30, 2002, plaintiff presented to the emergency room of Rex Hospital. Thereafter, plaintiff came under the care of Dr. Dennis Bullard, a neurosurgeon, who ordered an MRI. The MRI revealed a herniated disc at L5-S1, with a free fragment that significantly impressed upon the thecal sac and caused central canal stenosis. On August 2, 2002, Dr. Bullard performed a microdiscectomy at L5-S1.
17. Dr. Bullard stated that he felt it was possible for plaintiff as a result of her injury at work to have sustained the injury she described and the damage to ligamentous structures which resulted in the ruptured disc on which he operated in 2002. He also stated that plaintiff's herniated disc was related to her compensable injury based upon her history of continuous recurrent symptoms since the time of the injury and the absence of those symptoms before the injury. Dr. Bullard felt to a reasonable degree of medical probability that plaintiff's central disc herniation at L5-S1 and her need for a microdiskectomy was a direct and natural result of her injury in 1998.
18. At his deposition Dr. Patterson stated that the right-sided disc herniation at L5-S1 could have provided the same symptoms for which he treated her in 2000 and that the herniation could have progressed over time.
19. Dr. Patrick expressed his opinion that it was highly probable that plaintiff's compensable injury by accident caused the disc insult that led to the herniation in 2002.
20. The Full Commission finds based upon the greater weight of the credible medical evidence that plaintiff's herniated disc was causally related to her compensable injury on July 3, 1998. The treatment she received for her low back condition in 2002 was reasonably necessary to effect a cure, provide relief and lessen her period of disability.
21. Plaintiff reached maximum medical improvement on January 6, 2003. As a result of her July 3, 1998 injury, plaintiff retains a 10% permanent functional impairment of her back.
22. As a result of her herniated disc and surgery, plaintiff was totally incapable of earning wages in any employment from July 22, 2002 through September 2, 2002. Plaintiff returned to work for RBC Centura beginning September 3, 2002. From September 3, 2002 through September 10, 2002, she worked 12 hours and earned $150.00. From September 11, 2002 through September 18, 2002, she worked 20 hours and earned $250.00. From September 19, 2002 through September 26, 2002, plaintiff worked 24 hours and earned $300.00. Beginning September 27, 2002, plaintiff returned to full-time work for RBC Centura.
23. Plaintiff's diminished earning capacity from September 3, 2002 through September 26, 2002 was causally related to her herniated disc.
24. There is a substantial risk that plaintiff will require future medical treatment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on July 3, 1998 that resulted in an injury to her back. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's herniated disc was causally related to her compensable injury by accident. "If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury."Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255, 259,523 S.E.2d 720, 723 (1990), quoting Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 296, disc. rev. denied,343 N.C. 513, 472 S.E.2d 18 (1996); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). In the case at bar defendant failed to produce medical evidence that proved by the greater weight of the evidence that plaintiff's herniated disc was not directly related to the compensable injury and therefore plaintiff is entitled to the presumption that the herniation was causally related to the compensable injury by accident. Parsonsv. Pantry, Inc., supra.
3. Defendant's last payment of medical compensation was made on September 18, 2000. Plaintiff filed a Form 18M seeking additional medical compensation on August 29, 2002, which was within two years from the last payment of medical compensation and, therefore, plaintiff's claim for additional medical compensation was timely filed. N.C. Gen. Stat. § 97-25.1.
4. Plaintiff's claim for further indemnity compensation is not time barred because the two-year limitation in N.C. Gen. Stat. § 97-47
does not apply under the facts of this case. Although plaintiff's last compensation check was issued on June 21, 2000 and plaintiff did not file her Form 33 until August 29, 2002, this case is not a change of condition claim. N.C. Gen. Stat. § 97-47 does not apply where plaintiff has been paid temporary total compensation pursuant to N.C. Gen. Stat. § 97-18(b) and the extent of her permanent impairment has not been reviewed by the Industrial Commission. Beard v. Blumenthal Jewish Home, 87 N.C. App. 58,359 S.E.2d 261 (1987), disc. rev. denied, 321 N.C. 471,364 S.E.2d 918 (1988).
5. As a result of her July 3, 1998 injury, plaintiff is entitled to compensation for temporary total disability compensation at the rate of $532.00 per week from July 22, 2002 through September 2, 2002. N.C. Gen. Stat. § 97-29.
6. As a result of the compensable injury by accident and resulting surgery, plaintiff was temporarily partially disabled and is entitled to temporary partial disability compensation at the rate of $438.52 per week from September 3, 2002 through September 10, 2002; at the rate of $371.85 per week from September 11, 2002 through September 18, 2002; and at the rate of $338.52 per week from September 19, 2002 through September 26, 2002. N.C. Gen. Stat. § 97-30.
7. Plaintiff is entitled to the payment of permanent partial disability compensation for the 10% permanent functional impairment to her back at the rate of $532.00 per week for 30 weeks. N.C. Gen. Stat. § 97-31(23).
8. Plaintiff is entitled to payment of all medical expenses incurred as a result of her July 3, 1998 back injury, including additional future medical compensation. N.C. Gen. Stat. §§ 97-25;97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $532.00 per week from July 22, 2002 through September 2, 2002. N.C. Gen. Stat. § 97-29. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved in Paragraph 5.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of $438.52 per week from September 3, 2002 through September 10, 2002; at the rate of $371.85 per week from September 11, 2002 through September 18, 2002; and at the rate of $338.52 per week from September 19, 2002 through September 26, 2002. These amounts have accrued and shall be paid in a lump sum, subject to the attorney's fee approved in Paragraph 5.
3. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $532.00 per week for 30 weeks. This amount shall be paid in a lump sum, subject to the attorney's fee approved in Paragraph 5.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of her July 3, 1998 back injury, including additional future medical compensation.
5. A reasonable attorney's fee of 25% of the disability compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: 25% of the sums due plaintiff in Paragraphs 1, 2 and 3 of this Award shall be deducted from those amounts and be paid directly to plaintiff's attorney.
6. Defendant shall pay the costs.
This the 29th day of July, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd